## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JESSICA WILCOXSON,

   Plaintiff,

V.

PHYSICIANS AESTHETICS
ACADEMY, LLC et. al.,

   Defendants.

CIVIL ACTION NO.
1:19-cv-01041-SCJ

## PLAINTIFF'S SPECIFICATION AND ITEMIZATION
## IN SUPPORT OF MOTION FOR ATTORNEY'S FEES AND COSTS

Plaintiff respectfully submits his specification and itemization in support of her request for attorney's fees (Doc. 88) pursuant to Local Rule 54.2 (A)(2).  As detailed below, Plaintiff seeks $130,920 as a fully compensatory fee, and $5,185.15 in costs, for a total award of $136,105.15.

## I.   PROCEDURAL BACKGROUND

Plaintiff filed this action on March 5, 2019 alleging that Defendants failed to pay her wages for work she performed in violation of the Fair Labor Standards Act, 29 U.S.C. § 206 ("FLSA"). After Defendants filed counterclaim against Plaintiff, she amended her complaint to add a claim for retaliation in violation of Section 215 of the FLSA.  Although Plaintiff sought Defendants' consent to allow

her amended complaint, they refused and opposed her motion. [Doc. 14.] The Court overruled Defendants' objection and allowed the amended complaint. [Doc. 30.] During litigation, the parties pursued discovery, including the exchange of written interrogatories, document requests, and witness depositions. Plaintiff took two Rule 30(b)(6) depositions of Defendant Atlanta Medical Day Spa and Surgery Center, LLC. The second deposition was necessary because the designated representative, Dr. Atkins, was not fully and properly prepared for the first deposition.

At the close of discovery both parties moved for summary judgment, Defendants seeking summary judgment at to all of Plaintiff's claims and Plaintiff seeking summary judgment as to overtime liability under the FLSA and as to Defendants' counterclaims. The Court denied Defendants motion and granted Plaintiff's motion in part, finding that Defendants violated the FLSA in failing to properly compensate Plaintiff for all of her hours worked. [Doc. 76.] Throughout the discovery process, and as borne out in briefing before the court over the elusive time-keeping system, Defendants changed their story as to the existence and location of the time data regarding Plaintiff's work and the nature of the technology storing the data, culminating in Plaintiff's motion for discovery sanctions due to Defendants' alleged spoliation. The Court issued an order

requiring the production of the time data, preceded by a show-cause order. (Doc. 71.) To this day, Defendants have produced no data, other than a device referred to as "Timetrax." The parties' informed the Court of their settlement prior to Defendants' final Court-imposed deadline for the production of the data.

The parties settled Plaintiff's underlying claims based on financial terms that included Defendants' payment of $13,000 to Plaintiff. The settlement included $1,500 in unpaid overtime and $1,500 in liquidated damages and expressly stipulated that Plaintiff is a "prevailing party" for her unpaid FLSA wages. [Doc. 85-1, p.2.] Defendants paid an additional $10,000 as "alleged compensatory damages" to secure Plaintiff's release of her retaliation claim. *Id.* The $1,500 in back wages to Plaintiff was the full amount she sought.  [Doc. 85, p. 4.]  The Court approved this settlement on November 23, 2020 and gave the parties forty-five (45) days to resolve the matter of attorney's fees and costs. (Doc. 86.) Because the parties have not yet reached an agreement as to Plaintiff's fees and costs, Plaintiff files motion seeking the Court's resolution of this final dispute.[1]

Pursuant to 29 U.S.C. § 216(b), Plaintiff seeks a total of $136,105.15 for successful pursuit of his claims.

---

[1] On December 1, 2020, Plaintiff demanded her then fees of $125,894 and costs in the amount of $5,151.20. Defendants responded a month later, not disputing Plaintiffs' costs and offering just $30,000 in fees paid over 12 months.

## II.     <u>DISCUSSION</u>

When a plaintiff obtains a judgment for unpaid overtime, the FLSA provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).[2]  While a fee award under this provision is mandatory, the Court must exercise its discretion in determining the proper amount.  *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1542-43 (11th Cir.1985).

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The product of these two numbers is referred to as the "lodestar." *Id.*; *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 563 (1986). To assist its inquiry into the reasonableness of hourly rates and time expended in pursuit of the result obtained, a district court may take into account the twelve factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).  *Hensley*, 461 U.S. at 434.  However, the Supreme Court has been critical of the so-called

---

[2] In the settlement of the underlying claims, the parties agreed Plaintiff would be entitled to seek her fees.

*Johnson* factors to the exclusion of the lodestar method because they provide "very little actual guidance to district courts. Setting attorney's fees by reference to a series of sometimes subjective factors placed unlimited discretion in trial judges and produced disparate results." *Delaware Valley,* 478 U.S. at 563 (1986). Instead, district courts should consider that "[m]any of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley*, 461 U.S. at 434; *Delaware Valley*, 478 U.S. at 564-565. There is a *strong presumption* that the lodestar method yields a fee sufficient to induce a competent attorney to represent plaintiffs in meritorious civil rights cases. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010).

Plaintiff seeks a fully compensatory fee based on achieving a finding of FLSA liability on her central claim, as well as the parties' settlement agreement in which Defendant acknowledged Plaintiff's prevailing status at least as to her overtime claim. Plaintiff recovered the maximum amount allowed for her overtime claim, including 100% of liquidated damages. She also obtained a significant compensatory award for her retaliation claim. Given her full recovery, Plaintiff is entitled to a full award based on her lawyers' experience and reputation practicing in the area of civil rights and employment cases, the contingent nature of her fees which introduces a level of risk in obtaining fees and causes a delay in the payment

of fees for work performed, the time and labor expended, and customary fees paid or awarded for similar work. The Court should place substantial weight on the results obtained, rather than the isolated tasks performed during the litigation. "[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees …." *Hensley*, 461 U.S. 424, 440. The Eleventh Circuit summarized the importance of the overall result obtained in litigation as follows:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances, the fee award should not be reduced simply because plaintiff failed to prevail on every contention in the lawsuit . . . . [T]he court's rejection of, or failure to reach, certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

*U.S. v. Jones*, 125 F.3d 1418, 1429-30 (11th Cir. 1997). Here, Plaintiff does not seek any enhancement; her complete success entitles her to a fully compensable fee. The Court should also consider that claims for single plaintiffs brought under the FLSA rarely result in substantial verdicts. Here, Plaintiff worked for an hourly wage and only sought to be compensated for time Defendants unlawfully removed from her working time as a part of their normal timekeeping practices. Thus, while not considered huge based on the sheer dollar value, Plaintiff obtained every penny taken from her, a result envisioned by Congress when it enacted the FLSA.

### A.    Hourly Rates

In accordance with the above principles, the Court must first determine the reasonable applicable hourly rate for services rendered by experienced employment litigation attorneys in Atlanta. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir.1994); *Norman v. Housing Authority of the City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).

In *Blum v. Stenson*, 465 U.S. 886 (1984), the Supreme Court outlined the following standard:

> In seeking some basis for a standard, courts properly have required prevailing attorneys to justify the reasonableness of the requested rate or rates. To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence - in addition to the attorney's own affidavits - that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to - for convenience - as the prevailing market rate.

*Id.* at 896 n.11. Thus, the fee applicant should produce evidence regarding the reasonableness of the hourly rate in addition to his or her own affidavit." *Norman*, 836 F.2d at 1301. "[T]his circuit has recognized that a movant may meet his burden by producing either direct evidence of rates charged under similar

circumstances or opinion evidence of reasonable rates." *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996); *see also Norman*, 836 F.2d at 1299 (satisfactory evidence includes opinion evidence that the rates are reasonable).

Here, the hourly rates requested are those rates actually charged to clients on an hourly basis. (Coffman Declaration, ¶¶ 6, 8.) This is the best evidence as to the reasonableness of the hourly rates. In addition, the reasonableness of counsels' hourly rates is supported by the opinion attorney K. Prabhaker ("K.P.") Reddy, an Atlanta attorney with over 30 years of experience litigating employment and civil rights cases and who has experience in setting and petitioning for attorney's fees. (Declaration of K.P. Reddy). Based on the facts and circumstances of this case, counsel's experience and expertise, together with the results obtained for Plaintiff, the requested hourly rates are reasonable.

Mr. Coffman is the managing partner at Parks, Chesin & Walbert, P.C. He graduated *cum laude* from Boston University School of Law in 1992 and has 28 years of continuous legal experience. He is licensed to practice law in all federal district courts, as well as trial and appellate courts in Georgia. He has focused his litigation practice in the areas of employment and civil rights law since his admission to the Georgia Bar. (Coffman Decl. ¶¶ 2-4.) He has acted as lead counsel in hundreds of cases and as lead counsel in over 20 jury trials involving

employment disputes. *Id.* at ¶ 4.  Mr. Coffman's hourly rate for litigation clients who pay on a monthly basis and for contingency fee matters is $450.00 per hour. *Id.* at ¶ 5. He has received comparable fee awards from judges in the Northern District of Georgia based on his hourly rates. *Id.* at ¶ 7.

Mr. Cleveland graduated from Mercer University's Walter F. George School of Law in 2012 and has over eight years of continuous legal experience. Cleveland Decl. ¶ 6. Prior to attending law school, Mr. Cleveland worked for Parks, Chesin & Walbert, P.C. as a paralegal for almost two years, with the employment and civil rights team.  *Id*. He is licensed to practice law in all Georgia trial and appellate courts, this Court, and the Middle District of Georgia. *Id.* at ¶ 2. Mr. Cleveland has focused his litigation practice in the areas of workers' compensation, employment, and civil rights law since his admission to the Georgia Bar. Cleveland Decl. ¶¶ 6-7. He has acted as lead counsel in hundreds of cases, including numerous workers' compensation matters to full and final adjudication while serving as an Assistant Attorney General for the State of Georgia. *Id.* Mr. Cleveland's usual hourly rate for litigation clients who pay on an hourly basis is $350.00 per hour. *Id.* at ¶ 10. Further, Mr. Cleveland's hourly rate of $350 was approved by the Hon. Eleanor L. Ross in an FLSA wage and hour case. *Tye v. HCBJR, LLC*, N.D. Ga., Civil Action File No.: 1:17-cv-01087-ELR (Doc. #57) (April 9, 2019).

John Mays is another partner at Parks, Chesin & Walbert who provided some supervisory work on this case. He is a graduate of Columbia University and the Emory University School of Law, where he served as the Notes & Comments Editor for the Emory International Law Review. He has over 10 years of legal experience and is billed at the rate of $400 per hour, which is reasonable given his experience.

Plaintiff's petition is further supported by the opinion of K. Prabhaker Reddy, an experienced attorney who did not work on the case and has no interest in the outcome. Mr. Reddy's experience is significant in the area of employment litigation. He began his career as an assistant Attorney General litigating employment suits on behalf of state agencies and employees. (Reddy Decl., ¶ 3). Since October of 1996, Mr. Reddy has worked in private practice representing both employees and employers in employment disputes. *Id.* In this capacity he has experience and knowledge about the setting of hourly rates in hourly and contingent fee cases. *Id.* at ¶ 6. He opines that the hourly rates claimed are reasonable for a case like this one given counsels' relative experience and reputation in the community. *Id.* at ¶¶ 9-10.

### B.   Hours Expended for Services Rendered.

The Court should next consider whether the number of hours counsel

-10-

devoted to this case was reasonable. "[A]ll reasonable expenses and hours incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs …." *ACLU of Georgia v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (quoting *Dowdell v. City of Apopka*, 698 F.2d 1181, 1192 (11th Cir. 1983)). Counsel's exercise of billing judgment is critical to support the presentation of reasonable time. "Excessive, redundant, or otherwise unnecessary hours should be excluded" from the hours claimed because such time would not be reasonably billed to a paying client. *Norman*, 836 F.2d at at 1301 (internal quotations omitted).

The applicant must "maintain[] records to show the time spent on the different claims, and set[] out with sufficient particularity the general subject matter of the time expenditures so that the district court can assess the time claimed for each activity." *Laube v. Allen*, 506 F. Supp. 2d 969, 976 (M.D. Ala. 2007) (citing *Barnes*, 168 F.3d at 427).

In the present case, counsel maintained contemporaneous billing records for this and all cases handled by his law firm. Time is entered into a centralized billing system on a monthly or more frequent basis and assigned to particular matters. (Coffman Decl. ¶ 9.) Each month, before final bills are submitted to clients, the firm's attorneys review their entered time to make adjustment where necessary to

ensure the entries accurately reflect their work. The results are detailed billing records showing the attorneys' time and activities since the inception of the case. *Id.*, Attachment A. As set forth above, the time spent on the litigation of this case was necessary to obtain the results reflected in the settlement agreement. Defendant unnecessarily expanded these proceedings by including counter claims, opposing amended pleadings, refusing to engage in reasonable settlement efforts, and failing to timely produce records supporting Plaintiff's work time. These actions directly impacted the expenses of litigation and were all necessary to conclude the case.

In addition to reviewing the reasonableness of the hourly rates claimed, Mr. Reddy also reviewed the docket in the case. Based on his experience, Mr. Reddy knowledgeable about billing practices in employment lawsuits. According to Mr. Reddy, "the time and activities appearing in Plaintiff's counsel's billing summaries demonstrate that Mr. Coffman and Mr. Cleveland did not unreasonably engage in extraneous activities. While appropriate in any case, their entries are consistent with what one would expect to see in cases billed to clients monthly paying on an hourly basis." *Id.*, ¶ 14. Some of Mr. Reddy's opinions are based on the degree to which Defendant mounted a robust defense of the case. *Id.* at ¶ 13. Given the risks inherent in employment cases, and the relatively low damages in dispute, even in

those disputes employers claim are routine, the award of litigation fees and costs is necessary to ensure employee rights under the FLSA are properly vindicated. *Id.*, at ¶¶ 11-12.

Plaintiff anticipates that Defendant will argue for a significant fee reduction because the parties only stipulated that Plaintiff was the prevailing party on Plaintiff's FLSA back wages claim and its argument that Plaintiff did not "prevail" on every pending motion. Defendants' argument ignores the lengths to which Plaintiff had to go to force Defendants to recognize the FLSA violations. Besides, a plaintiff "need not succeed on all claims in order to obtain attorneys' fees." *See Lambert v. Fulton County*, 151 F. Supp. 2d 1364, 1368 (N.D. Ga. 2000); *accord Solomon v. Gainesville*, 796 F.2d 1464, 1466-67 (11th Cir. 1986) (where plaintiff succeeded in "primary objective" of litigation, attorneys fees were appropriate). The Supreme Court has held that "[w]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *Hensley*, 461 U.S. at 440. Wilcoxson's status as a prevailing party is not diminished because the parties did not stipulate she was also a prevailing party on her retaliation claim or specifically on her pending motion for discovery sanctions. After all, Defendants paid significantly more in settlement than the $3,000 devoted to her

overtime claim. Defendants cannot maintain that Plaintiff lost her retaliation claim because they paid her $10,000 to release it. Nor did Defendant prevail on any issue whatsoever. Even if Plaintiff had actually lost an issue, which she did not, a fully compensable fee would still be appropriate. *See Miller v. Kenworth of Dothan, Inc.*, 117 F.Supp.2d 1247, 1263-64 (M.D.Ala., 2000) ("the fact that Plaintiff did not prevail on one of his claims does not and should not prohibit Plaintiff from recovering the full amount of the lodestar fee").

"Where there is an interrelation of facts and legal theories in a case it is not error for a district court to refuse 'to apportion the fee award mechanically on the basis of [a plaintiff's] success or failure on particular issues.'" *Hensley*, 461 U.S. at 435; *Duckworth v. Whisenant*, 97 F.3d at 1397 (reasonable fee should include time spent on all claims arising from the same course of conduct and share a common core of fact).

When claims are interrelated, as often happens in civil rights litigation, time spent pursuing an unsuccessful claim may be compensable if it also contributed to the success of other claims. *Hensley*, 461 US at 435. Here, Plaintiff has not lost any claims. At the time of settlement, her unresolved claims were still pending and Defendant paid her $10,000 beyond her overtime damages to resolve them. Not surprisingly, courts have awarded fees for time spent pursuing an unsuccessful

-14-

employment discrimination claim, when it is brought in tandem with a successful retaliation claim. A full fee award is justified when a plaintiff only prevails on one claim because "the successful claim for retaliatory [conduct] could not have been tried effectively without reviewing and analyzing the facts that led to the underlying discrimination charge." *Merriweather v. Family Dollar Stores*, 103 F.3d 576, 584 (7th Cir.1996); *see also Dunning v. Simmons Airlines*, 62 F.3d 863, 874 (7th Cir. 1995)(holding that the district court did not abuse its discretion in awarding plaintiff attorney's fees because claims for retaliation, on which she prevailed, were interrelated to her gender discrimination claim which was dismissed prior to trial); *Roberts v. Roadway Exp., Inc.*, 149 F. 3d 1098, 1111 (10th Cir. 1998)(no fee reduction for the failure to prevail on the hostile work environment claim where plaintiff won on retaliation).

In *Flanagan v. Office of the Chief Judge of the Circuit Court*, 663 F. Supp. 2d 662, 665 (N.D. Ill. 2009), the district court awarded full fees where the plaintiff prevailed on her retaliation claim but lost her sex discrimination claim. Finding the two claims interrelated, the court explained,

> Although claims of discrimination and retaliation are, thus, not *per se* related for *Hensley* purposes, the underlying facts supporting the two claims may nevertheless be so closely linked that a successful claim for retaliation could not have been tried effectively without reviewing and analyzing the facts that led to the underlying discrimination charge. When claims are interrelated, as is often the case in civil rights

> litigation, time spent pursuing an unsuccessful claim may be compensable if it also contributed to the success of other claims. Proof of discrimination is not an element of the retaliation claim, but the court may, within its discretion under § 1988, determine that the facts supporting a claim of discrimination are so integral to the retaliation claim as to make the attorneys' work on these related issues compensable.

*Id.* at 668-69 (internal citations omitted). The court found that the attorneys' work on the unsuccessful discrimination claims contributed to the success of the retaliation claim given that (1) success of the retaliation claim depended on the plaintiff's ability to establish a reasonable good-faith belief in the legitimacy of her discrimination claims; (2) her credibility was a central issue in the case, and (3) a review of the underlying discrimination claim was critical to both issues. *Id.* 669-70. Consequently, the court awarded legal counsel $230,188.42 in fees finding that the $75,000 compensatory award in the plaintiff's favor constituted a "significant vindication of [the plaintiff's] rights. *Id.* at 673-74.

Here, there is no doubt that Wilcoxson's claims for unpaid wages and retaliation, as well as Defendants' counterclaims, are inextricably related. All the claims in this case hinged on the crucial question, was Plaintiff properly compensated for all of her time she worked on behalf of Defendants?

Plaintiff brought a claim for unpaid wages. Defendants counter-sued Plaintiff for unjust enrichment and conversion, claiming they had actually overpaid

her. Plaintiff then amended her complaint to include a claim of retaliation under the FLSA, asserting Defendants' counterclaims lacked basis in law and fact. At the heart of each claim lies the number of hours Plaintiff actually worked and whether Defendants properly compensated her for those hours. Therefore, it was critical for Wilcoxson's counsel to investigate and review all aspects of her claims, verify facts, pursue witnesses, and conduct the necessary legal research to support her claims of unpaid wages and retaliation.

Of equal importance was Wilcoxson's defense against Defendants' numerous counter claims. Prevailing against Defendant on all of its counterclaims was an essential element of Plaintiff's retaliation claim. Because Defendant asserted these claims, it cannot contend that Plaintiff's defense against them is unrelated to her retaliation claim. Moreover, while Defendants may not have expressly stipulated to prevailing party status on Plaintiff's retaliation claim, the majority of the settlement funds paid to Plaintiff were applied to her retaliation claim.

A full fee is also authorized due to Defendants' repeated rejection of multiple opportunities to resolve this case for a much more reasonable sum. From the outset of the case, Plaintiff attempted a mutual resolution in line with her ultimate recovery. On May 16, 2019, near the outset of litigation and prior to

defendants' filing their Answer and Counterclaims, Plaintiff proposed a settlement of $12,096.29, which included all fees and costs.[3] *This is an amount less than what Defendants ultimately paid for Plaintiff's overtime and retaliation claims alone.* Rather than respond to this reasonable opening demand, Defendants pursued their counterclaims. (Cleveland Declaration, ¶ 8.) Plaintiff revised her offer upwards to reflect additional fees on June 12, 2019 after receipt of the counterclaims. Plaintiff informed Defendants of the likelihood of a retaliation claim. Defendant did not respond to this offer. Plaintiff's efforts continued in July of 2019. On July 18, 2019, Plaintiff informed Defendants that her legal fees were increasing and had reached $21,975. On August 15, 2019, Plaintiff updated her fee demand to $25,085. Defendant's highest offer was $500.00, inclusive of fees and costs. After Plaintiff took Defendants' second 30(b)(6) deposition, necessitated by Dr. Atkins's lack of preparedness, Defendants reluctantly agreed to mediate the case on December 16, 2019. During the mediation, defendants offered less than half of Ms. Wilcoxson's fees and costs at the time. *Id.*

In another effort to keep down the costs of litigation by foregoing summary judgment motions, Plaintiff proposed that the parties consent to a bench trial to resolve all issues. (Cleveland Declaration, ¶ 9 (see attached email correspondence

---

[3] This demand included a good-faith estimate of unpaid wages in the amount of $3,000.

between W. Cleveland and D. Phillips.)) In response to this offer, Defendants took

a stunning position, consistent with their litigation posture:

> My client is also aware that it is your position there is clear liability.
> My client is ***not interested in voluntarily paying Jessica anything*** and
> will do anything she can to reduce her recovery to nothing at best and
> the littlest amount possible at worst.

*Id. (emphasis added).* Defendants thereafter declined to make any further

reasonable offers toward settlement until after the Court granted Plaintiff's motion

for summary judgment on the FLSA claim and directed Defendants to recover and

produce time data in response to Plaintiff's Requests for Production #14 and #15.

[Doc. 76, p. 49.] In the end, Plaintiff's counsel was right. This was a case of clear

FLSA liability. In the absence of Plaintiff's persistent efforts through summary

judgment and to obtain the time data, Defendants would likely never have agreed

to settle this relatively small FLSA dispute.

As demonstrated by Defendants' course of conduct, what began as a

relatively straight-forward case of illegal time-rounding and lunch deductions,

morphed into a case that became impossible to settle due to the fees and costs

Plaintiff was forced to incur. In the end, Defendants obtained exactly what they

bargained for, driving up the costs of litigation to deter Plaintiff from continuing to

pursue her claim. They should not be heard to complain now that the chickens have

come home to roost.

-19-

**C.     Costs.**

Counsel also tracked Plaintiff's expenses in this case, which included filing fees of $400, service fees of $75, deposition transcription costs of $2,683.70, copies for use in the case of $18 (90 copies @ $.20), $5.95 in postage, and $2,002.50 in mediation expenses.  These costs total $5,185.15. (Coffman Decl., Exhibit A.)

## III.   CONCLUSION

Based on the foregoing, Plaintiff seeks fees in the amount of the Court should award a total of $130,920 as fees and $5,185.15 as costs, for a total award of $136,105.15.

Andrew Y. Coffman
Georgia Bar No. 173115
acoffman@pcwlawfirm.com

**PARKS, CHESIN & WALBERT, P.C.**
75 Fourteenth Street, 26th Floor
Atlanta, GA 30309
Telephone: 404-873-8000
Facsimile:  404-873-8050

*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE AND TYPE**

I certify that on January 7, 2021 I served the within and foregoing *PLAINTIFF'S SPECIFICATION AND ITEMIZATION IN SUPPORT OF MOTION FOR ATTORNEYS' FEES* on opposing counsel by filing with the Court's electronic filing and service system (CM/ECF), which will automatically send e-mail notices of such filing to the attorneys of record.

I further certify that the foregoing has been prepared in Times New Roman 14 point font, one of the font and point selections approved by the Court in Local Rule 5.1(C).

Andrew Y. Coffman